## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RAY VICTOR BOYD
A/K/A I-NOBLE RA'SUN ALLAH,
          Plaintiff,

          v.                              CIVIL NO. 3:11cv824(AWT)

LEO ARNONE, ET AL.,
          Defendants.

### RULING ON DEFENDANTS' SECOND MOTION TO DISMISS

The pro se plaintiff, Ray Victor Boyd, a/k/a I-Noble Ra'Sun Allah, who is currently incarcerated at Osborn Correctional Institution, filed this action asserting claims under 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, et seq. ("RLUIPA"), and various provisions of the Connecticut General Statutes and the Connecticut Constitution. The Amended Complaint named thirty-nine defendants.[1]

---

[1]  The names and titles of those defendants are as follows: Commissioner Leo Arnone, Former Commissioners Brian Murphy and T. Lantz, District Administrators M. Lajoie and Mark Strange, Directors of Programs and Treatment Patrick Hynes, Mary Marcial and Monica Rinaldi, Director of Religious Services Anthony Bruno, Wardens Peter Murphy and James Dzurenda, Deputy Wardens Timothy Farrell, S. Barone, S. Frey and Janet Sicilia, Director of Security Kimberly Weir, Captains Beaudry, Manley, Kelly and Walker, Lieutenants Corl and Paine, Correctional Officers Perez and Allen, Disciplinary Investigator Roy, Mail Room Clerk and Counselor Supervisor DeGennaro, Remedy Coordinator R. Boland, Chaplains Albert Pitts and Angelo Calabrese, Legislative Advisor N. Anker, Counselor Supervisor of the Security Division J. Aldi, Governor D. Malloy, Directors of Oversight for Media Review Board Sharr and B. Garnett, John/Jane Doe Media Review Board members, Assistant Attorney General Steve Strom, the City of Suffield, and the City of Newtown.

On September 26, 2013, the court dismissed the Fifth, Seventh and Eighth Amendment claims, the § 1985 and § 1988 claims, the claims pursuant to Conn. Gen. Stat. §§ 52-1, 52-29, 52-471 and 51-345, the claims under Article First, §§ 9 and 10 of the Connecticut Constitution, and all other claims against defendants Roy, Malloy, Barone, Garnett, Sharr, Rodriguez, Sicilia, Strange, Lantz, Brian Murphy, Anker, the City of Newtown, and the City of Suffield pursuant to 28 U.S.C. § 1915A(b)(1).  (See Doc. No. 15.)  The court concluded that the First and Fourteenth Amendment claims under 42 U.S.C. § 1983, the deprivation of religion claims under RLUIPA, and the state law claims under Conn. Gen. Stat. § 52-571b and Article First, §§ 3, 14, 20 of the Connecticut Constitution should proceed against defendants Arnone, Bruno, Peter Murphy, Rinaldi, Frey, DeGennaro, Strom, LaJoie, Dzurenda, Corl, Weir, Beaudry, Pitts, Manley, Allen, Paine, Kelly, Walker, Marcial, Boland, Aldi, Perez, Hynes, Calabrese, Farrell, and the John/Jane Does in their individual and official capacities.

The remaining defendants have moved to dismiss the § 1983 claims for monetary relief against them in their individual capacities pursuant to Rule 12(b)6 of the Federal Rules of Civil Procedure.  For the reasons set forth below, the motion is being granted in part and denied in part.

## I.  Legal Standard

When deciding a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)6, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Flores v. Southern Peru Copper Corp., 343 F.3d 140, 143 (2d Cir. 2003).  The court's review is limited to "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken."  Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993).  The court considers not whether the plaintiff ultimately will prevail, but whether he has asserted sufficient facts to entitle him to offer evidence to support his claim.  See York v. Ass'n of Bar of City of New York, 286 F.3d 122, 125 (2d Cir.), cert. denied, 537 U.S. 1089 (2002).

In reviewing the complaint in response to a motion to dismiss, the court applies a "plausibility standard," which is guided by two working principles.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  First, the requirement that the court accept as true the allegations in the complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009)

(quoting <u>Iqbal</u>, 556 U.S. at 678).  Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679).  Even under this standard, however, the court liberally construes a <u>pro se</u> complaint.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) ("A document filed <u>pro</u> <u>se</u> is to be liberally construed and a <u>pro se</u> complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (per curiam) (internal quotation marks and citations omitted); <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994) (court should interpret <u>pro se</u> plaintiff's complaint "to raise the strongest arguments [it] suggest[s]").

## II.  **Factual Allegations**[2]

The plaintiff alleges that he is an adherent of a religion called the Nation of Gods and Earths ("NGE"), also known as the Five Percenters.  From October 2008 to July 2009, the plaintiff was incarcerated at Garner Correctional Institution in Newtown, Connecticut ("Garner").  During this time period defendants Arnone, Bruno, Rinaldi, Strom, LaJoie, Dzurenda, Weir, Marcial,

---

[2]  The factual allegations are taken from the Amended Complaint and the exhibits attached to the Amended Complaint.

4

Hynes, Calabrese and Farrell refused to permit him to engage in congregate religious services and prayers associated with the NGE.

In July 2009, correctional officials transferred the plaintiff to MacDougall-Walker Correctional Institution in Suffield, Connecticut ("MacDougall"). From July 2009 to December 2012, defendants Arnone, Bruno, Peter Murphy, Rinaldi, Frey, DeGennaro, Strom, LaJoie, Corl, Weir, Beaudry, Pitts, Manley, Allen, Paine, Kelly, Walker, Marcial, Boland, Aldi, Perez and Hynes refused to permit the plaintiff to engage in congregate religious services and prayers associated with the NGE, denied his request to purchase religious headwear, and restricted his access to a religious newspaper called The Five Percenter. The plaintiff seeks monetary damages from the defendants in their individual capacities.

## III. Discussion

The defendants move to dismiss the § 1983 claims against them in their individual capacities. They argue that: (1) the claims against Assistant Attorney General Steve Strom are barred by absolute immunity; (2) the allegations of retaliatory transfer fail to state a claim upon which relief may be granted; (3) any allegations of lost property fail to state a claim under the Fourteenth Amendment; (4) the plaintiff has failed to allege the defendants' personal involvement in the alleged violations of his

constitutional rights; and (5) they are entitled to qualified immunity.

## A. __Absolute Immunity__

The defendants contend that the claims against defendant Strom are barred by absolute immunity because all of the actions described in the Amended Complaint were taken in his capacity as an Assistant Attorney General. The plaintiff contends that defendant Strom's conduct in giving advice to defendant Bruno, the Department of Correction's Director of Religious Services, was not associated with his role as counsel for defendant Bruno.

"Absolute immunity is of a rare and exceptional character." Barrett v. United States, 798 F.2d 565, 571 (2d Cir. 1986). Courts employ a "functional approach" in determining whether state officials are entitled to absolute immunity. Forrester v. White, 484 U.S. 219, 229 (1988). Thus, the court's focus is on "the nature of the function performed . . . [rather than] the identity of the actor who performed it." Id.

State prosecutors are afforded absolute immunity for all actions arising from conduct "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976). In Barrett, the Second Circuit extended the absolute immunity of prosecutors to assistant attorneys general who work for and defend the state and state employees in civil actions. See id. at 573. Absolute immunity applies to all

actions taken in the course of their representation of the state, even to questionable or harmful conduct.  <u>See</u> <u>id.</u>  The burden is on the official seeking absolute immunity to demonstrate that "such immunity is justified for the function in question."  <u>Burns v. Reed</u>, 500 U.S. 478, 486 (1991).

The plaintiff claims that defendant Bruno referred his requests concerning collective worship for NGE members and his request that he be permitted to wear a religious cap to defendant Strom for review.  The plaintiff asserts that the review of and advice regarding his religious requests were not "normal functions" of an Assistant Attorney General.

The defendants state that Assistant Attorneys General are appointed by the Attorney General pursuant to Conn. Gen. Stat. § 3-125.  The Attorney General is responsible for general supervision of all legal matters in which the state is an interested party or in which the official acts and doings of state officers are called into question.  Thus, the Assistant Attorneys General fall under the general supervision of the Attorney General for the State of Connecticut.

The defendants contend that defendant Strom has represented Connecticut correctional officers and officials, including defendant Bruno, in many cases involving religious claims by inmates.  In representing the State of Connecticut Department of Correction in civil actions against inmates, defendant Strom has

7

consulted with and offered advice to defendant Bruno.  The
defendants state that defendant Strom represented defendant Bruno
in another case involving a claim by an inmate seeking collective
worship as a member of the NGE, Brewer v. Arnone, Civil No.
3:11cv19(DFM).  The defendants argue that it was reasonable for
defendant Strom to receive communications from defendant Bruno
regarding the plaintiff's requests for collective worship by the
NGE members because precisely the same issue was being litigated
in Brewer.  However, the communications here are dated from 2008
through 2011, but Brewer was not filed until January 1, 2011, and
defendant Strom did not appear on behalf of defendant Bruno in
Brewer until April 8, 2011.

    The Second Circuit has held that providing advice to state
officials prior to litigation does not entitle an Attorney
General to absolute immunity.  See Blouin ex. Rel. Estate of
Pouliot v. Spitzer, 356 F.3d 348 (2d Cir. 2004) ("Even in the
investigative phase of a criminal case, advice by state
prosecutors warrants only qualified immunity. . . .  Since it
would be anomalous to extend absolute immunity to advice in the
civil context, but not the criminal context, we decline to take
that step.")  Therefore, the court concludes that defendant Strom
has not met his burden of demonstrating that he is entitled to
absolute immunity for the period from December 2008 to April 7,
2011, when he was reviewing plaintiff's requests and providing

advice to defendant Bruno.  However, as of April 8, 2011, defendant Strom had entered his appearance on behalf of defendant Bruno in Brewer, and any referrals of similar requests by the plaintiff in this action to Attorney Strom and his advice regarding those requests could be considered a traditional part of defendant Strom's role as an advocate for the State of Connecticut Department of Correction.  As such, defendant Strom's conduct on and after April 8, 2011 is entitled to absolute immunity.

Therefore, the motion to dismiss is being granted on the ground of absolute immunity as to defendant Strom to the extent that he reviewed plaintiff's requests and advised defendant Bruno regarding those requests on or after April 8, 2011.  The motion is being denied on the ground of absolute immunity to the extent that defendant Strom advised defendant Bruno regarding the plaintiff's religious exercise requests for the period of December 2008 to April 7, 2011.

### B.   Retaliation Claims

The defendants argue that the plaintiff's claim that prison officials transferred him from Garner to MacDougall in July 2009 in retaliation for his filing of requests and grievances seeking collective worship as a member of the NGE is conclusory and should be dismissed.

To state a retaliation claim, the plaintiff must show that

9

his conduct was protected by the Constitution or federal law and that this protected conduct was a "substantial or motivating factor" in the alleged retaliatory action by prison officials. Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003).  Because claims of retaliation are easily fabricated, courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient.  See Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 2003).

The plaintiff asserts that defendants Bruno, Marcial, Dzurenda, Strom and Calabrese transferred him to MacDougall in July 2009 in retaliation for his requests to be permitted to collectively worship and practice his religion as an NGE adherent.  The plaintiff asserts no facts to support this claim of retaliation.  The motion to dismiss is granted as to the plaintiff's retaliatory transfer claim.  The other claims of retaliation remain.[3]

### C.  **Property Claims**

The defendants argue that the plaintiff's claims of property loss or destruction fail to state a claim upon which relief may be granted.  The plaintiff did not respond to this argument.

---

[3]  The plaintiff also alleges that the defendants' decisions to designate the NGE as a disruptive group and to deny him the opportunity for congregate worship as well as the decisions to deny him access to many volumes of The Five Percenter newspaper were made in retaliation for his attempting to exercise his First Amendment rights to file grievances and assert complaints.

The plaintiff alleges that many of the volumes of The Five Percenter newspaper that prison officials at MacDougall rejected were subsequently lost.  He claims that he contacted defendant DeGennaro, MacDougall's Mailroom Counselor Supervisor, about the lost volumes, but he did not respond.  The plaintiff contends that Department of Correction Advisor Anker failed to train and supervise the mailroom employees with regard to handling rejected publications and returning them to the publisher.  The plaintiff asserts that he has been forced to spend approximately $20 every time a volume of the newspaper is lost by correctional officials.

The Supreme Court has found that the Due Process Clause of the Fourteenth Amendment is not violated when a prison inmate loses personal belongings due to the negligent or intentional actions of correctional officers if the state provides an adequate post-deprivation compensatory remedy.  See Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527, 543 (1981).  The State of Connecticut provides an adequate remedy for the kind of deprivation the plaintiff alleges.  See State of Connecticut Department of Correction Administrative Directive 9.6(16) (Oct. 1, 2011) (providing that Department of Correction's Lost Property Board shall hear and determine any claim by an inmate who seeks compensation not to exceed $3,500 for lost or damaged personal property and that inmate may present the property claim to the Claims Commissioner after the Board

denies the claim in whole or in part); Conn. Gen. Stat. § 4-141
et seq. (providing that claims for payment or refund of money by
the state may be presented to the Connecticut Claims Commission);
see also, e.g., S. v. Webb, 602 F. Supp. 2d 374, 386 (D. Conn.
2009) (finding Connecticut has sufficient post-deprivation
remedies for seizures of property by state officials).  This
state remedy is not rendered inadequate simply because the
plaintiff anticipates that he will obtain a more favorable remedy
in the federal court system or that it may take longer in the
state system before his case is resolved.  See Hudson, 468 U.S.
at 535.

The plaintiff has not alleged that the property claims
procedures of either the Office of the Claims Commissioner or the
Department of Correction are inadequate.  Therefore, the motion
to dismiss is being granted as to the property claims associated
with the alleged loss of volumes of The Five Percenter newspaper.

### D. **Personal Involvement**

Defendants Murphy, Dzurenda, LaJoie, Weir, Hynes, Marcial,
Rinaldi, Aldi, Frey, Farrell, Kelly, Boland, Beaudry, Corl,
DeGennaro, Manley, Paine and Walker argue that the claims against
them should be dismissed because the plaintiff has not alleged
their personal involvement in the alleged unconstitutional
conduct.  The plaintiff asserts that he has adequately alleged
the involvement of all remaining defendants.

To recover money damages under § 1983, the plaintiff must show that these defendants were personally involved in the constitutional violations.  See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).  Supervisory officials cannot be held liable under § 1983 solely for the acts of their subordinates.  See Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985).

The plaintiff may show personal involvement by demonstrating one or more of the following: (1) the defendant actually and directly participated in the alleged unconstitutional acts; (2) the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) the defendant created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) the defendant was grossly negligent in supervising the correctional officers who committed the constitutional violation; and (5) the defendant failed to take action in response to information regarding the occurrence of unconstitutional conduct.  See Colon, 58 F.3d at 873 (citation omitted).  In addition, the plaintiff must demonstrate an affirmative causal link between the inaction of the supervisory official and his injury.  See Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002).

In Iqbal, the Supreme Court found that a supervisor can be held liable only "through the official's own individual actions."

13

556 U.S. at 676.  This decision arguably casts doubt on the continued viability of some of the categories for supervisory liability.  The Second Circuit, however, has not revisited the criteria for supervisory liability following Iqbal.  See Dow v. Whidden, 557 Fed. Appx. 71, 73 n.1 (2d Cir. 2014); Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013).  Because it is unclear whether Iqbal overrules or limits Colon, the court will continue to apply the categories for supervisory liability set forth in Colon.

### 1.  **Supervisory Defendants**

The defendants contend that defendants Peter Murphy, Dzurenda, Frey, Farrell, LaJoie, Weir, Hynes, Rinaldi, Marcial and Aldi are supervisory officials and that they cannot be held liable for acts of their subordinates.

With respect to defendant Dzurenda, the plaintiff asserts that he wrote to him on two occasions during the plaintiff's confinement at Garner regarding his need for collective worship. Defendant Dzurenda responded to the plaintiff's requests and indicated that he had forwarded the requests to defendant Calabrese for review and response.  Thus, the plaintiff has not alleged that defendant Dzurenda failed to take action in response to his requests for collective worship.  See Sealey v. Giltner, 116 F.3d 47, (2d Cir. 1997) (finding no personal involvement on part of superintendent who referred one letter addressed to him

14

by plaintiff to another administrator for a decision and responded to a second letter from plaintiff by indicating that another administrator had issued a decision).

The plaintiff also alleges that he sent a letter to defendant Marcial, Director of Programs and Treatment at Garner, in November 2008. Defendant Marcial forwarded the plaintiff's letter to defendant Bruno for review and response. Defendant Bruno made the plaintiff aware of this fact on November 16, 2008. Thus, the plaintiff has not alleged that defendant Marcial failed to take action in response to his requests for collective worship. See id.

As to defendant Rinaldi, on October 19, 2011, defendant Bruno sent the plaintiff a letter informing him that his request to purchase an NGE crown with tassels was denied for security reasons. The letter included a notation that a copy had been sent to defendant Rinaldi, Acting Director of Programs and Treatment. On October 24, 2011, the plaintiff responded to defendant Bruno's letter. The plaintiff sent letters to defendants Bruno, Murphy, Strom, Aldi, Pitts and Boland. The plaintiff did not send a letter to defendant Rinaldi. Therefore, the plaintiff has not sufficiently alleged defendant Rinaldi's involvement in the alleged denial of his request for an NGE crown. Other than the fact that defendant Rinaldi's name appears on the letter sent by defendant Bruno to the plaintiff, there is

15

no other allegation that defendant Rinaldi was involved in or was aware of the further investigation regarding the plaintiff's request to purchase an NGE crown.

Therefore, the motion to dismiss is being granted as to the claims against defendants Dzurenda, Marcial and Rinaldi for failure to allege personal involvement.

With respect to defendant Aldi, on November 4, 2011, defendant Aldi responded to the plaintiff's letter and informed him that a group of officials would further investigate whether he could purchase an NGE crown. The plaintiff alleges that he never received an answer to his request for an NGE crown.

With respect to defendant Frey, the plaintiff claims that he was involved in the unlawful rejection of volumes of The Five Percenter newspaper and also in responding to grievances that he filed regarding the rejection of those newspaper volumes. The plaintiff has sufficiently alleged that defendant Frey was involved in the violation of his First Amendment rights in connection with the decisions to deny him access to The Five Percenter newspaper.

With respect to defendant Farrell, the plaintiff alleges that he wrote to defendant Farrell on two occasions during his confinement at Garner. In response, defendant Farrell denied the plaintiff's requests for televised NGE programming. The plaintiff claims that defendant Farrell failed to provide him

16

with access to collective worship or other religious programming
for his faith in violation of the First Amendment.  Therefore,
the plaintiff has alleged sufficient involvement of defendant
Farrell in violation of his First Amendment rights.

With respect to defendant Peter Murphy, the plaintiff claims
that defendant Peter Murphy was aware of his requests for
collective worship, his request to purchase an NGE crown, and the
unlawful rejections of The Five Percenter newspaper.  These
allegations are supported by letters and requests sent to
defendant Peter Murphy by the plaintiff about his religious
issues as well as defendant Peter Murphy's responses to these
requests and letters.

With respect to defendant LaJoie, the plaintiff has alleged
sufficient involvement of defendant LaJoie in the plaintiff's
requests for collective worship as defendant LaJoie responded to
the appeal of a grievance filed by the plaintiff addressing this
issue.

With respect to defendant Weir, the plaintiff has provided
evidence that defendant Weir was involved in the decision to
place the NGE on the Disruptive Group List as well as involved in
subsequent decisions to ban certain issues of The Five Percenter
newspaper that were sent to the plaintiff.

With respect to defendant Hynes, the plaintiff alleges that
he sent numerous letters and requests to him asking to be

17

permitted to engage in collective worship, but defendant Hayes failed to respond to the letters or requests.  Attached to the Amended Complaint are letters from defendant Bruno to the plaintiff which include notations that copies of those letters were sent to defendant Hynes.  Thus, the plaintiff has asserted sufficient facts to show that defendant Hynes was aware of his requests for collective worship at MacDougall and failed to take action to resolve any constitutional violations related to those requests that might have occurred.

Therefore, the motion to dismiss on the ground of lack of personal involvement is being denied as to the § 1983 claims against defendants Aldi, Frey, Farrell, Peter Murphy, LaJoie, Weir and Hynes.

### 2.   <u>**Involvement of Subordinates**</u>

The defendants argue that the plaintiff has failed to allege the personal involvement of defendants Beaudry, Kelly, Manley, DeGennaro, Corl, Paine, Boland and Walker in the violations of the plaintiff's constitutional rights.  The defendants contend that the failure to respond to a letter or a grievance is insufficient to demonstrate the personal involvement of these defendants in the alleged violations of the plaintiff's First Amendment rights.  The Second Circuit has held, however, that a motion to dismiss on the ground of lack of personal involvement should be denied if a plaintiff alleges that he sent a written

18

complaint to a correctional official because he is "entitled to have the court draw the reasonable . . . inference that the [official] in fact received the letter, read it and became aware of the alleged conditions of which [the inmate] complained." Grullon, 720 F.3d at 141.

The plaintiff alleges that defendants Beaudry, Kelly, Manley and Paine were involved in the decision to designate the NGE as a disruptive group.  Defendants Kelly, DeGennaro, Manley, Corl and Walker were involved in establishing the Media Review Board, served on the Board and/or issued decisions to reject or ban multiple volumes of The Five Percenter Newspaper.  The plaintiff alleges that defendant Boland was involved in denying or rejecting many grievances related to the plaintiff's requests to be permitted to worship collectively, the ban on his receipt of volumes of The Five Percenter Newspaper, and the denial of his request for an NGE crown.  The plaintiff has sufficiently alleged the involvement of defendants Beaudry, Kelly, Manley, DeGennaro, Corl, Paine, Boland and Walker in the violation of his First Amendment rights.  Therefore, the motion to dismiss on the ground of lack of personal involvement is being denied as to these defendants.

### D. **Qualified Immunity**

The defendants argue that even if the plaintiff has presented sufficient evidence to support a finding that they

violated his right to exercise his NGE beliefs when they classified the NGE as a disruptive group, denied him the opportunity to worship as a collective group and wear an NGE crown, and rejected many volumes of The Five Percenter Newspaper, they are entitled to qualified immunity.  The plaintiff argues that the defendants were aware that the NGE was a religion and was not a disruptive group and that qualified immunity is inappropriate.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v, Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine if an official is entitled to qualified immunity, the court considers whether (1) the facts alleged or shown by the plaintiff state a violation of a statutory or constitutional right by the official and (2) the right was clearly established at the time of the challenged conduct.  See Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citation omitted).  A negative answer to either question means that immunity from monetary damages claims is appropriate.  See Pearson, 555 U.S. at 236.  The Supreme Court has held that district courts have the discretion to choose which of the two prongs of the qualified immunity standard to decide first in view

20

of the particular circumstances surrounding the case to be decided.  See id. at 236.

Under the second prong, a right is clearly established if, "at the time of the challenged conduct . . . every 'reasonable official would [have understood] that what he [was] doing violate[d] that right.'" al-Kidd, 131 S. Ct. at 2083 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  There is no requirement that a case have been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate."  Id.  "A broad general proposition" does not constitute a clearly established right.  See Reichle v. Howards, 132 S. Ct. 2088, 2094 (2012).  Rather, the constitutional right allegedly violated must be established "in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official."  Id. (quoting Anderson, 483 U.S. at 640).

The defendants argue that their decisions to designate the NGE as a disruptive group, to deny the plaintiff's request for congregate worship, and to ban or restrict the plaintiff's access to The Five Percenter newspaper and to an NGE crown were not objectively unreasonable in view of the law in effect at that time.  The rights of an inmate to attend religious services and receive religious literature were clearly established as of 2008.  See Cruz v. Beto, 405 U.S. 319 (1972) (per curiam); Mawhinney v.

Henderson, 542 F.2d 1, 3 (2d Cir. 1976); Burgin v. Henderson, 536 F.2d 501, 503 (2d Cir. 1976); Mukmuk v. Commissioner of Dep't of Corr. Servs., 529 F.2d 272, 275 (2d Cir. 1976) .

The defendants contend, however, that neither the Supreme Court nor the Second Circuit had ruled on the constitutional protection to be accorded the Five Percenter literature, headwear, or collective worship.  In addition, the defendants contend that the status of the NGE as a dangerous group was unsettled.  See Marria v. Broaddus, No. 97Civ. 8297(NRB), 2004 WL 1724984, at *2 (S.D.N.Y. July 30, 2004) (supplementary submissions by defendants support finding that permitting the NGE to congregate would pose serious risk of group violence and that the NGE "has been associated with violence in the New York prison system by identifying specific large scale disturbances within the last two decades in which Nation members were involved"); Marria v. Broaddus, No. 97Civ.8297(NRB), 2003 WL 21782633 at *18 (S.D.N.Y. 2003) (finding defendants did produce some evidence that "prison inmates identified as 'Five Percenters' have been associated with instances of violence and disruption . . . [and] that 'the Five Percenters' may somewhat uniquely connote both a religion and a gang in the New York State prison system") (emphasis in original); Self-Allah v. Annucci, No. 97-607, 1999 WL 299310, at *9 (W.D.N.Y. Mar. 25, 1999) ("Defendants have clearly shown that the Five Percenters act as an organized group

within the prison system to receive new members, intimidate
members of rival groups, and participate in criminal activity,
including extortion, robbery, assaults and drug trafficking.");
Breland v. Goord, No. 94 CIV. 3696(HB), 1997 WL 129533, at *5-6
(S.D.N.Y. Mar. 27, 1997) (acknowledging that defendants'
evidentiary submissions "created the impression that inmates
associated with the Five Percenters have been involved in violent
disturbances and that some inmates are afraid of other inmates
identified as Five Percenters," but denying summary judgment as
to First Amendment claim because issue of fact existed as to link
between banned religious material and the violent incidents of
the Five Percenters).

     With respect to the plaintiff's claim that the defendants
violated his right to exercise his religion when they denied him
the opportunity to engage in collective worship, the defendants
argue that their decision was in accord with the protocols
approved by a judge in a case involving the NGE in the Southern
District of New York.   See Marria, 2004 WL 1724984, at *2-3.
Because neither the Second Circuit, nor the Supreme Court has
held that the NGE is a religion or that its adherents have a
right to possess NGE literature or wear an NGE crown, it was not
unreasonable for the defendants to believe that designating the
NGE as a disruptive group, monitoring incoming NGE mail and
literature for safety and security reasons, and denying the

plaintiff permission to engage in collective worship and wear an NGE crown did not violate the law at the relevant time.  Thus, the motion to dismiss is being granted with respect to the plaintiff's First Amendment claims against the defendants for money damages on the ground of qualified immunity.

## VI.  Conclusion

The Motion to Dismiss (Doc. 45) is GRANTED in part and DENIED in part.  The motion is granted on the ground of absolute immunity as to defendant Strom to the extent that he reviewed plaintiff's requests and advised defendant Bruno regarding those requests on or after April 8, 2011, and is denied to the extent that he advised defendant Bruno regarding the plaintiff's religious exercise requests from December 2008 until April 7, 2011.  The motion is granted as to as to the retaliatory transfer claim against defendants Bruno, Marcial, Dzurenda, Strom and Calabrese.  The motion is granted as to the plaintiff's claims of property loss associated with the alleged loss of volumes of The Five Percenter newspaper against all defendants.  The motion is granted as to First Amendment claims against defendants Dzurenda, Marcial and Rinaldi in their individual capacities on the ground of lack of personal involvement, and is denied as to defendants Aldi, Frey, Farrell, Peter Murphy, Weir, Hynes, Beaudry, Kelly, Manley, DeGennaro, Corl, Paine, Boland and Walker in their individual capacities.  The motion is granted on the ground of

qualified immunity as to the First Amendment religion claims
against all defendants in their individual capacities.

The claims for retaliation[4] against defendants Arnone,
Bruno, Peter Murphy, Frey, DeGennaro, Strom, LaJoie, Corl, Weir,
Beaudry, Pitts, Manley, Allen, Paine, Kelly, Walker, Boland,
Aldi, Perez, Hynes, Calabrese and Farrell in their individual
capacities and the claims for injunctive relief for violations of
the First Amendment and RLUIPA against defendants Arnone, Bruno,
Peter Murphy, Rinaldi, Frey, DeGennaro, Strom, LaJoie, Dzurenda,
Corl, Weir, Beaudry, Pitts, Manley, Allen, Paine, Kelly, Walker,
Marcial, Boland, Aldi, Perez, Hynes, Calabrese and Farrell in
their official capacities, and the causes of action under Conn.
Gen. Stat. § 52-571b and Article First, §§ 3, 14, 20 of the
Connecticut Constitution against defendants Arnone, Bruno, Peter
Murphy, Rinaldi, Frey, DeGennaro, Strom, LaJoie, Dzurenda, Corl,
Weir, Beaudry, Pitts, Manley, Allen, Paine, Kelly, Walker,
Marcial, Boland, Aldi, Perez, Hynes, Calabrese and Farrell in
their individual capacities remain.

It is so ordered.

Signed this 30th day of September 2014, at Hartford,
Connecticut.

                                    _____/s/_____
                                    Alvin W. Thompson
                                    United States District Judge

_____

[4]   See claims set forth in footnote 3.

25